**Carl DREW, Petitioner,**

v.

**SUPERINTENDENT, MCI–SHIRLEY, Respondent.**

Civil Action No. 07–12393–PBS.

United States District Court,
D. Massachusetts.

April 10, 2009.

Cathryn A. Neaves, Law Office of Cathryn Neaves, Andover, MA, for Petitioner.

Susanne G. Reardon, Office of the Attorney General, Trial Division, Boston, MA, for Respondent.

## ORDER

PATTI B. SARIS, District Judge.

"After review of the objections, I adopt the report and recommendation. However, because the issues are close, I will certify for appeal if requested."

## *REPORT AND RECOMMENDATION ON RESPONDENT'S MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS AS TIME–BARRED (# 10)*

COLLINGS, United States Magistrate Judge.

### I. Introduction

Carl Drew ("Drew") petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.(# 1) The Respondent, Paul M. Verdini, the Superintendent of MCI–Shirley, has filed a Motion to Dismiss the Petition for Writ of Habeas Corpus as Time-barred (# 10), along with a supporting memorandum of law, (# 13). Through counsel, Drew has filed an Opposition to Motion to Dismiss Petition as Time Barred under 28 U.S.C. § 2244(d). (# 18) For the following reasons, I shall recommend granting the motion to dismiss.

## II. Background

I present only facts necessary to resolve the statute of limitations issue. The facts underlying Drew's conviction have been set out in *Commonwealth v. Drew*, 397 Mass. 65, 489 N.E.2d 1233 (1986), and the procedural history culminating in this dispute has been set out in *Commonwealth v. Drew*, 447 Mass. 635, 856 N.E.2d 808 (2006), *cert. denied*, 550 U.S. 943, 127 S.Ct. 2269, 167 L.Ed.2d 1106 (2007). In any event the parties generally do not dispute the following procedural history.

Drew was convicted of first-degree murder by a jury in Massachusetts state court on March 13, 1981. He was sentenced to a mandatory term of life in prison without possibility of parole. Drew filed a motion for a new trial on March 30, 1981, which the trial court denied on April 23, 1981. On February 17, 1983, assisted by new counsel, Drew filed a second motion for a new trial, which another Superior Court judge denied on August 29, 1983. Drew then directly appealed his conviction as well as the two denials for state post-conviction relief. On March 12, 1986, the Massachusetts Supreme Judicial Court ("SJC") affirmed Drew's conviction and the denial of his two motions for a new trial.

On January 6, 1992, Drew, acting *pro se*, filed a third motion for a new trial, asserting claims of ineffective assistance of trial and appellate counsel. The motion judge (who was not the trial judge) denied this motion on April 16, 1992. Drew timely filed an application for leave to appeal with a single justice of the SJC, as required by Mass. Gen. L. ch. 278, § 33E. A series of four different appellate counsel were appointed in connection with this appeal; despite the SJC issuing several show cause orders, for various reasons all four counsel failed to pursue the appeal. Ultimately, Drew's petition for leave to appeal was dismissed on December 15, 1994, for lack of prosecution. *See Drew*, 447 Mass. at 636, 856 N.E.2d at 811.

In 1995, Drew was again appointed counsel, who inquired into the status of the previous appeal, and learned of its dismissal. (See# 18, Exh. 1 at 11) On September 16, 2003, Drew's appointed counsel filed a fourth motion for a new trial, asserting, *inter alia*, the claims that Drew had presented in his 1992 *pro se* petition. On January 31, 2005, the motion judge denied the motion following an evidentiary hearing. Drew appealed this decision, and again applied for leave to appeal under the gatekeeper provision, Mass. Gen. L. ch. 278, § 33E. This time, on October 17, 2005, the gatekeeper (Cordy, J.) granted the application in part, permitting Drew to appeal the ineffective assistance of counsel claims that Drew had originally raised in his *pro se* motion in 1992, and again in the counseled 2003 motion. The SJC, on full review of the issues that proceeded on appeal, denied all relief on November 9, 2006. On December 20, 2006, the SJC denied Drew's petition for rehearing, and the Supreme Court denied certiorari review on May 18, 2007. Drew filed his federal petition for habeas corpus on December 20, 2007.

## III. Analysis

The parties agree that because Drew's conviction became final before April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Drew was allowed a one-year grace period (absent any tolling) after that date within which to file a petition for habeas corpus. *See, e.g., Currie v. Matesanz*, 281 F.3d 261, 264 (1st Cir.2002). Drew filed his habeas petition in federal court on December 20, 2007, well beyond the expiration of the grace period. Drew, however, contends that his petition is timely under 28 U.S.C. § 2244(d)(2), which provides: "The time during which a properly

filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." According to Drew, the *pro se* motion for a new trial that he filed on January 6, 1992, was "properly filed" and "pending" for purposes of 28 U.S.C. § 2244(d)(2) until December 20, 2006, when the SJC denied Drew's petition for rehearing.[1] Alternatively, Drew argues that the limitations period should be equitably tolled. The Court considers these arguments in turn.

### A. Tolling under 28 U.S.C. § 2244(d)(2)

Drew first contends that his 1992 application for state post-conviction review was pending at the start of AEDPA's limitation period. According to Drew, the gap between the proper filing of the 1992 application and the denial of rehearing on December 20, 2006, should not be counted toward AEDPA's limitation period. Under *Carey v. Saffold*, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002), a state application for post-conviction relief is "pending" within the meaning of 28 U.S.C. § 2244(d)(2), "as long as the ordinary state collateral review process is 'in continu-

ance'—*i.e.*, 'until the completion of' that process. In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.'" *Id.* at 219–220, 122 S.Ct. 2134. Because Drew's state petition was in fact dismissed for lack of prosecution on December 15, 1994, Drew's argument hinges on the effect that the federal habeas court accords to the gatekeeper's decision to overlook the earlier dismissal. Drew points to the following language in the single justice's memorandum granting Drew's application for leave to appeal to the SJC:

When present counsel began to represent Drew in September of 1995, he wrote to the Court inquiring about the status of this matter and discovered that the case had been dismissed [for lack of prosecution]. As the Commonwealth suggested at the single justice hearing, defense counsel could have attempted to find some procedural mechanism to resurrect the 1992 appeal. However, I am not prepared to preclude Drew from bringing substantial issues before the court because his lawyer proceeded to bring a new motion (more fully developed) rather than resurrect an old ap-

---

1. For ease of reference, the following time line sets out the relevant dates:

March 12, 1986 SJC affirms Drew's conviction and the denial of his two pre-appeal new trial motions

January 6, 1992 Drew files *pro se* motion for new trial raising ineffective assistance of counsel claims

April 16, 1992 State trial court denies motion

April 27, 1992 Drew files notice of appeal and application for leave to appeal with single justice of the SJC

December 15, 1994 Petition for leave to appeal dismissed for want of prosecution

April 24, 1996 AEDPA enacted; one-year grace period commences

April 24, 1997 Absent tolling, AEDPA's one-year limitations period expires

September 16, 2003 Drew, through counsel, files fourth motion for new trial, raising, *inter alia*, ineffective assistance of counsel claims raised in 1992 *pro se* motion for new trial

January 31, 2005 State trial court denies fourth motion for new trial

October 17, 2005 Gatekeeper grants leave to appeal ineffective assistance of counsel claims raised in 1992 petition

November 9, 2006 SJC affirms denial of motion for new trial, rejecting ineffective assistance of counsel claims on the merits

December 20, 2006 Petition for rehearing denied

December 20, 2007 Drew files section 2254 petition in federal court

peal that court appointed counsel failed to prosecute. I am thus inclined to treat this portion of Drew's petition as if it represents a continuation of the 1992 appeal.

# 18, Exh. 1 at 11.

According to Drew, the 1992 state petition was "pending" for federal habeas purposes because the state court treated Drew's ineffective assistance of counsel claims, presented in the 2003 petition, as " 'a continuation' of the [1992] appeal from the denial of [Drew's] third motion." *Drew,* 447 Mass. at 640, 856 N.E.2d at 814. Thus, under Drew's theory, because the application for state postconviction relief was pending at the time the grace period commenced, Drew had a full year to pursue federal habeas relief after the denial of the petition for rehearing of the post-conviction petition, *i.e.,* until December 20, 2007, the date on which he filed this petition. The issue then is whether the first petition for post-conviction relief was "pending" for federal habeas purposes during the more than ten-year gap between the time that the SJC dismissed the first motion for post-conviction relief for lack of prosecution, and the gatekeeper's decision to permit review of that motion, despite the earlier dismissal.

█ It is true that a federal habeas court looks to a state's procedural rules to determine whether a state petition for post-conviction relief is "pending." *See Currie,* 281 F.3d at 271 ("we have chosen to rely on the state's own procedural rules in determining how long an application for post-conviction review is 'pending' "); *Jones v. Hulick,* 449 F.3d 784, 789 (7th Cir.2006) ("the issue of whether an application for postconviction relief is 'pending' for habeas purposes is governed by state law"), *cert. denied,* 549 U.S. 1121, 127 S.Ct. 940, 166 L.Ed.2d 719 (2007); *Payne v.*

*Kemna,* 441 F.3d 570, 571 (8th Cir.2006) ("Whether [petitioner's] appeal was 'pending' for purposes of § 2244 is a matter of federal law.... The governing federal law, in turn, requires an examination of the state court procedures.") (citations omitted). But even under Massachusetts state law, Drew's 1992 appeal from the denial of his motion for state post-conviction relief was not "pending" at the time that AEDPA's one-year statute of limitation began to run for Drew on April 24, 1996; it had been dismissed on December 15, 1994. Under Drew's theory, because the SJC deemed the appeal as a continuation of the earlier petition, a federal habeas court ought to likewise consider the petition "pending" for the several year gap.[2]

The problem with this theory is that it ignores a straightforward reading of the habeas statute. Drew had no petition pending (even under state law) at the time that AEDPA's statute of limitations began to run and at the time it expired. At that juncture, the SJC had finally disposed of the petition (albeit not on the merits), and Drew took no further action on the application. In other words, at a certain distinct point under Massachusetts procedural rules the possibility of further appellate review of this 1992 petition would have been extinguished. *Cf. Currie,* 281 F.3d at 263 ("an application for post-conviction relief is pending from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures") (internal quotation marks and citation omitted). Drew's approach would give section 2244(d)(2) "a Cheshire-cat like quality, both there and not there at the same time," *Fernandez v. Sternes,* 227 F.3d 977, 980 (7th Cir.2000), inasmuch as it depends on the fortuity of events occurring after the expiration of the AEDPA deadline, and a state court's dis-

---

2. There is no dispute that the 1992 petition was "properly filed" in state court.

cretionary decision to decline to enforce its own rules.[3] Indeed, if Drew had attempted to file a habeas petition at any point during the period from April 24, 1997 to October 17, 2005 (the date that the gatekeeper resuscitated the earlier petition) or even September, 2003 (the date Drew filed his fourth petition seeking to resuscitate the claims), he would plainly have been out of time. In short, "[t]hat a request may be resuscitated does not mean that it was 'pending' in the interim." *Id.* The Court thus concludes that because the state petition was not pending from December 15, 1994, to October 17, 2005, the federal habeas petition is untimely.

This conclusion accords with the majority of courts who have concluded, in an analogous context, that a state court decision to permit an untimely appeal from the denial of a motion for post-conviction relief "cannot erase the time period during which nothing was pending before a state court." *Gibson v. Klinger,* 232 F.3d 799, 804 (10th Cir.2000); *see also Moore v. Crosby,* 321 F.3d 1377, 1381 (11th Cir.2003) ("The statutory tolling provision does not encompass a period of time in which a state prisoner does not have a 'properly filed' post-conviction application actually pending in state court."); *Allen v. Mitchell,* 276 F.3d 183, 186 (4th Cir.2001) (agreeing with Fifth, Seventh and Tenth Circuits that "nothing is 'pending' for purposes of § 2244(d)(2) when the time for seeking review [on a particular petition for state habeas relief] has elapsed and there is no application under consideration by the state court").

Drew, citing to *Currie v. Matesanz,* argues that his application was "pending" because "[a]t all times [he] 'made proper use of state court procedures,'" (# 18 at 7–8) (quoting *Currie,* 281 F.3d at 270), in pursuing state court relief on his ineffective assistance of counsel claims. *See also Currie,* 281 F.3d at 270 (noting that the untimely appeal cases "turn ... on the fact that the petitioner made proper use of state court procedures in pursuing post-conviction relief in the state appellate courts") (internal quotation marks and citation omitted). The record suggests otherwise. As Drew notes in his brief, "[a]n attorney appointed to represent Mr. Drew in 1995 learned of the [1994] dismissal and eventually filed another motion for a new trial in 2003." (# 18 at 6) Thus, it appears that for eight years, no action was taken to make use of state process. The Court must also conclude that no petition was pending during this time frame. *Cf. Fernandez,* 227 F.3d at 980 ("[I]t is not sensible to say that the petition continues to be 'pending' after the time for further review has expired without action to continue the litigation.").

**3.** The Court is mindful of the Supreme Court's recent opinion in *Jimenez v. Quarterman,* —— U.S. ——, 129 S.Ct. 681, 172 L.Ed.2d 475 (2009), but concludes that it does not affect the analysis here. *Jimenez* held that "where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet 'final' for purposes of § 2244(d)(1)(A)." *Id.* at 686. There, the Supreme Court concluded that under the plain meaning of the statute, although the petitioner's conviction had initially become "final" on October 11, 1996, the Texas state court's decision to reopen direct review of petitioner's conviction and to grant an out-of-time appeal on September 25, 2002, rendered the original judgment not yet "final" for the purposes of section 2244(d)(1)(A). *Jimenez* emphasized that its decision was "a narrow one," limited to construing the "language [that] points to the conclusion of direct appellate proceedings in state court." *Id.* Recently the Eighth Circuit rejected an argument that *Jimenez* has a bearing on the question whether an application is "pending" for purposes of § 2244(d)(2). *See Streu v. Dormire,* No. 07–3430, 557 F.3d 960, 967 n. 2 (8th Cir.2009).

## B. Equitable Tolling

 Drew argues in the alternative that equitable tolling applies to his claims, which are otherwise untimely. To be entitled to equitable tolling, Drew must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005). The party seeking to invoke equitable tolling "bears the burden of establishing the basis for it," and must therefore establish that the circumstances are "extraordinary" and that he acted diligently. *Neverson v. Farquharson*, 366 F.3d 32, 41, 42 (1st Cir.2004). In all events, " '[e]quitable tolling . . . is the exception rather than the rule; resort to its prophylaxis is deemed justified only in extraordinary circumstances.' " *Id.* at 42 (quoting *Donovan v. Maine*, 276 F.3d 87, 93 (1st Cir.2002)) (further citation omitted).

The First Circuit has enumerated "some of [the] factors that may influence a court's decision whether or not to grant equitable tolling in a habeas case." *Trapp v. Spencer*, 479 F.3d 53, 61 (1st Cir.2007) (footnote omitted). They include: 1) "[t]he petitioner's own diligence in pursuing habeas relief," *id.*; 2) "[w]hether some extraordinary circumstance prevented the petitioner from making a timely filing," *id.*; 3) "[t]he petitioner's diligence in the pursuit of other post-conviction remedies and the process already afforded in the state system," *id.*; 4) "[a]ny prejudice to the prosecution that would result from tolling and possible retrial," *id.*; 5) "[t]he fact that equitable tolling is not available in cases of dubious merit," *id.*; 6) "[w]hether or not the case is a capital case and whether or not the petitioner has been sentenced to death," *id.*

 Drew argues that equitable tolling is warranted in his case because of the "seriatim attorney neglect," (# 18 at 9), which led to the dismissal for lack of prosecution of Drew's appeal from the denial of his 1992 motion for post-conviction relief. Drew notes that the gatekeeper, in agreeing in 2005 to review the claims that had been dismissed for lack of prosecution in 1992, catalogued the omissions of Drew's four court-appointed counsel, (*see* # 18, Exh. 1 at 10 n. 10), and Drew contends that the series of attorney omissions was egregious enough to warrant equitable tolling. The Court disagrees on this point.

It is true that Drew's court-appointed counsel between July, 1992, and December, 1994, displayed a serious and inexplicable lack of diligence in permitting Drew's *pro se* efforts to lapse. But even accepting that attorney inaction was egregious during this time frame, and that Drew ought not be faulted for this inaction, Drew does not explain why his newly-appointed counsel in 1995, who learned of the dismissal, waited until 2003 to file a fourth motion for new trial in an effort to remedy the omissions. In 1995, the federal statute of limitations had not yet begun to run for Drew, and if counsel had filed an application for post-conviction relief at any point between learning of the dismissal and April 24, 1997, Drew's application would indeed have been "pending." Drew, however, does not fault counsel for delaying until 2003—his counsel's efforts to obtain further review in state court were, after all, successful—and the Court therefore has no basis on which to conclude that attorney error, in fact, contributed to the untimeliness of Drew's habeas petition. In any event, the eight-year delay in filing the last motion for post-conviction relief does not particularly bespeak diligence in pursuing state remedies, and the Court cannot conclude that extraordinary circumstances warrant equitable tolling here.

The other factors do not weigh in Drew's favor. The Court notes that Drew waited until the last day of what he thought was the expiration of the federal habeas statute of limitations to file his petition. Furthermore, the merits of Drew's claims are questionable-the SJC ultimately thoroughly reviewed (and rejected) the merits of Drew's ineffective assistance of counsel claims, concluding, *inter alia,* that "[c]ounsel demonstrated both familiarity with the voluminous discovery in the case and the significance of the various components." *Drew,* 447 Mass. at 647, 856 N.E.2d at 818. The fourth factor does not aid Drew (he was convicted over twenty-five years ago, in 1981, so prejudice to the prosecution is self-evident), and the sixth factor is inapplicable. For these reasons, the Court concludes that Drew has not established that equitable tolling is warranted.

### IV. Conclusion and Recommendation

For all the above reasons, I RECOMMEND that the respondent's Motion to Dismiss Petition for Writ of Habeas Corpus as Time–Barred (# 10) be ALLOWED and that Judgment enter DISMISSING the Petition.

### V. Review by the District Judge

The parties are hereby advised that pursuant to Rule 72, Fed.R.Civ.P., any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed.R.Civ.P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services,* 848

F.2d 271 (1st Cir.1988); *United States v. Emiliano Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980); *see also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

March 12, 2009.