DeGUILIO, District Judge.
Joseph Lombardo is serving a life sentence on his convictions for racketeering, murder, and obstruction of justice. After *550 we affirmed his convictions and sentence on direct appeal, he retained a new attorney to argue that his convictions were the product of his trial counsel’s ineffectiveness. However, his new attorney misunderstood when the one-year limitations period for motions under 28 U.S.C. § 2255 began running, and thus filed Lombardo’s motion too late.
The question in this appeal is whether an attorney’s miscalculation of a statute of limitations justifies equitably tolling the limitations period for a motion under § 2255. Following longstanding precedent, we hold that it does not, even if the result is to bar a claim of ineffective assistance of trial counsel. We therefore affirm the district court’s dismissal of Lombardo’s untimely motion.
I.
Joseph Lombardo was a long-time member of the Chicago Outfit, the lineal descended of A1 Capone’s gang. He is also no stranger to federal prosecution. In the 1970s, Lombardo was federally indicted for Outfit thefts from the Teamster’s Pension Fund, but those charges were dropped when Daniel Seifert, the key witness against him, was murdered prior to trial— a murder for which the jury in this case found Lombardo responsible. In the 1980s, Lombardo was charged and convicted in two separate cases, one of which involved a conspiracy to bribe a United States Senator, and the other of which involved maintaining hidden financial and management interests in Las Vegas casinos. His convictions in those cases were affirmed, and his appeals from various postconviction motions were unsuccessful. United States v. Williams, 737 F.2d 594 (7th Cir. 1984); United States v. Cerone, 830 F.2d 938 (8th Cir. 1987); United States v. Lombardo, 859 F.2d 1328 (8th Cir. 1988); Lombardo v. United States, 865 F.2d 155 (7th Cir. 1989); Lombardo v. United States, 956 F.2d 272 (table), No. 91-1085, 1992 WL 38620 (7th Cir. 1992).
In the present case, Lombardo was charged in 2005 with a racketeering conspiracy for “having conducted the Outfit’s affairs through a pattern of racketeering activity that extended from the 1960s to 2005 and included a number of murders, along with extortion, obstruction of justice, and other crimes.” United States v. Schiro, 679 F.3d 521, 524 (7th Cir. 2012). The indictment also charged him with committing the Seifert murder as part of that conspiracy. After his indictment, Lombar-do evaded arrest for a number of months, leading to an obstruction of justice charge in a superseding indictment.
Lombardo was tried along with several of his co-defendants at a trial that lasted nearly three months. The jury convicted him on both counts and also found him responsible for the Seifert murder. The district court imposed a life sentence, and we affirmed Lombardo’s conviction and sentence on appeal. Schiro, 679 F.3d 521. Lombardo then filed a petition for certio-rari, which the Supreme Court denied on March 25, 2013. Lombardo v. United States, 568 U.S. 1251, 133 S.Ct. 1633, 185 L.Ed.2d 620 (2013). Lombardo also petitioned for rehearing, but the Supreme Court denied that petition on June 3, 2013. Lombardo v. United States, — U.S.-, 133 S.Ct. 2792, 186 L.Ed.2d 236 (2013).
At some point, Lombardo retained a new attorney, David Jay Bernstein, to represent him in his attempt to vacate his conviction. On May 31, 2014, Bernstein filed a motion under § 2255 on Lombardo’s behalf, arguing that Lombardo received ineffective assistance of counsel at trial. In general, the motion and accompanying brief argued that Lombardo’s trial counsel failed to adequately investigate the case and develop his defense at trial, in viola *551 tion of Lombardo’s Sixth Amendment right to counsel.
The government moved to dismiss the motion as untimely. It noted that Lombar-do’s conviction became final for the purposes of § 2255 when the Supreme Court denied his petition for certiorari on March 25, 2013—not when it denied his petition for rehearing on June 8, 2013. Lombardo’s motion on May 31, 2014 was thus filed outside the one-year statute of limitations under § 2255(f)(1).
In response, Lombardo conceded that his motion was untimely, but asked the district court to forgive the late filing on account of his attorney’s “excusable neglect.” His attorney represented that he miscalculated the deadline due to his mistaken belief that the statute of limitations began running only when the Supreme Court denied the petition for rehearing, not when it denied the petition for certio-rari. He further represented that this error was “based on misinformation provided by a trusted paralegal.” In a supplemental filing, he cited the Supreme Court’s decision in Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010) and asked that the statute of limitations be equitably tolled.
In its ruling, the district court agreed with the parties that the motion was filed outside the one-year statute of limitations, and it found that counsel’s miscalculation of the deadline did not justify equitable tolling. Accordingly, it dismissed the motion as untimely and did not reach the merits of- Lombardo’s claim. After Lom-bardo appealed, we issued a certificate of appealability and instructed the parties to “address whether Lombardo is entitled to equitable tolling because of ineffective assistance of counsel in his initial-review collateral proceeding. See Trevino v. Thaler, — U.S.-, 133 S.Ct. 1911, 185 L.Ed.2d 1044 (2013); Martinez v. Ryan, 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012); Ramirez v. United States, 799 F.3d 845, 852-54 (7th Cir. 2015).” Because doing so would require Bernstein to argue his own ineffectiveness, we also appointed new counsel to represent Lombardo on appeal.
II.
Section 2255 contains a “1-year period of limitation” that runs from “the date on which the judgment of conviction becomes final.” 28 U.S.C. § 2255(f)(1). As relevant here, the judgment of conviction becomes final when the Supreme Court denies a petition for certiorari, regardless of whether a defendant then seeks rehearing before the Supreme Court. Robinson v. United States, 416 F.3d 645, 650 (7th Cir. 2005). Lombardo filed his petition just under one year after the denial of rehearing, but over fourteen months after the denial of certiorari, making his petition untimely. To avoid dismissal, Lombardo thus argues that the statute of limitations should be equitably tolled.
“[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule.” United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000). To qualify for equitable tolling, a petitioner must show: (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in his way and prevented timely filing. Holland, 560 U.S. at 649, 130 S.Ct. 2549; Boulb v. United States, 818 F.3d 334, 339-40 (7th Cir. 2016). The district court found that Lombardo failed the second element, as he did not demonstrate extraordinary circumstances, so it dismissed the motion without needing to consider Lombardo’s diligence. “ ‘We review the decision to deny equitable tolling for an abuse of discretion.’ ” Carpenter v. Douma, 840 F.3d 867, 870 (7th Cir. 2016) *552 (quoting Obriecht v. Foster, 727 F.3d 744, 748 (7th Cir. 2013)).
We first address Lombardo’s argument that his attorney’s error in calculating the statute of limitations meets the demanding standard for extraordinary circumstances required by existing precedent. We then address his argument that we should create an exception to that standard specific to claims of ineffective assistance of trial counsel, under which a petitioner could establish extraordinary circumstances by showing that their postconviction counsel was ineffective (or they had no counsel) and that their underlying claim has some merit.
A.
In the district court, Lombardo asked to equitably toll the statute of limitations because his attorney mistakenly believed that the statute of limitations began running only upon the Supreme Court’s denial of rehearing, not upon the denial of certiorari. However, as we, the Supreme Court, and other courts have consistently held, mistakes or miscalculations of that sort by a party’s attorney do not satisfy the extraordinary circumstances element for equitable tolling. E.g., Holland, 560 U.S. at 651-52, 130 S.Ct. 2549; Lawrence v. Florida, 549 U.S. 327, 336-37, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007); Griffith v. Rednour, 614 F.3d 328, 331 (7th Cir. 2010); Robinson, 416 F.3d at 650 n.1; Rouse v. Lee, 339 F.3d 238, 248-49 (4th Cir. 2003) (en banc) (collecting cases); Modrowski v. Mote, 322 F.3d 965, 968 (7th Cir. 2003).
“Extraordinary circumstances” are present only when an “external obstacle” beyond the party’s control “stood in [its] way” and caused the delay. Menominee Indian Tribe of Wis. v. United States, — U.S. -, 136 S.Ct. 750, 756, 193 L.Ed.2d 652 (2016). In other words, the circumstances that caused a party’s delay must be “both extraordinary and beyond its control.” Id. But parties are bound by the acts of the attorney they choose to represent them, just as a principal is bound by the acts of its agent. Maples v. Thomas, 565 U.S. 266, 280-81, 132 S.Ct. 912, 181 L.Ed.2d 807 (2012) (“[W]hen a petitioner’s postconviction counsel misses a filing deadline, the petitioner is bound by the oversight....”); Irwin v. Dep’t of Veterans Affairs, 498 U.S. 89, 92, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (“Under our system of representative litigation, ‘each party is deemed bound by the acts of his lawyer-agent....’” (quoting Link v. Wabash R. Co., 370 U.S. 626, 634, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962))). Thus, errors by an attorney acting on a party’s behalf do not constitute external obstacles beyond the party’s control. Johnson v. McBride, 381 F.3d 587, 589-90 (7th Cir. 2004); see Maples, 565 U.S. at 280-82, 132 S.Ct. 912; Coleman v. Thompson, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (“[T]he attorney is the petitioner’s agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must ‘bear the risk of attorney error.’” (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986))). This principle generally applies both to civil litigants and to habeas petitioners, neither of which have a constitutional right to counsel. Lawrence, 549 U.S. at 336-37, 127 S.Ct. 1079; Johnson, 381 F.3d at 589-90; see also Modrowski, 322 F.3d at 968 (“[Attorney negligence is not extraordinary and clients, even if incarcerated, must vigilantly oversee, and ultimately bear responsibility for, their attorneys’ actions or failures.” (internal quotation omitted)).
The mistake by Lombardo’s counsel in identifying the correct filing deadline was *553 neither extraordinary nor beyond Lombar-do’s control. Indeed, we have previously held that this exact same mistake did not warrant equitable tolling. In Robinson, the petitioner’s counsel filed a § 2255 motion less than one year after the Supreme Court denied hearing—which counsel mistakenly believed to be the operative date— but more than one year after the Supreme Court denied certiorari. 416 F.3d at 646-47. The petitioner argued that the limitations period should be equitably tolled in light of this mistake. We disagreed: “Equitable tolling is granted sparingly, where extraordinary circumstances beyond the litigant’s control prevented timely filing; a mistaken understanding about the deadline for filing is not grounds for equitable tolling.” Id. at 650 n.l.
That holding is consistent with the Supreme Court’s more recent decisions on equitable tolling. In Lawrence, the Supreme Court confronted another mistake similar to the one here, in the context of a § 2254 petition by a state prisoner. 549 U.S. 327, 127 S.Ct. 1079. Like under § 2255, petitions under § 2254 face a one-year statute of limitations from the date the conviction becomes final. 28 U.S.C. § 2244(d)(1). However, that period is tolled by statute for § 2254 petitions while a petition for postconviction review is pending in the state courts. § 2244(d)(2). In Lawrence, the petitioner’s attorney believed a state-court petition remained “pending” for statutory tolling purposes until the United States Supreme Court denied certiorari. The Supreme Court held, though, that a state-court petition is no longer pending once the state’s highest court disposes of the petition, even if the petitioner then seeks certiorari from the Supreme Court. 549 U.S. at 332, 127 S.Ct. 1079. By that standard, Lawrence’s federal habeas petition was untimely.
Lawrence argued in the alternative that he was entitled to equitable tolling, but the Supreme Court disagreed, holding that he had “fallen far short of showing ‘extraordinary circumstances’ necessary to support equitable tolling.” Id. at 337, 127 S:Ct. 1079. In particular, the Court rejected the argument that an attorney’s mistake of this sort would justify equitable tolling:
Lawrence argues that his counsel’s mistake in miscalculating the limitations period entitles him to equitable tolling. If credited, this argument would essentially equitably toll limitations periods for every person whose attorney missed a deadline. Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel.
Id. at 336-37,127 S.Ct. 1079.
The Supreme Court reiterated these principles in Holland, stating that “a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling.” 560 U.S. at 651-52, 130 S.Ct. 2549 (internal quotations omitted). The facts of Holland extended well beyond a simple miscalculation or misunderstanding of the statute of limitations, though, and entailed an attorney’s prolonged pattern of neglect and detachment from his client, involving years of directions that went unheeded, pleas for information that went unanswered, and requests for substitution of counsel that were denied. Id. at 652-53, 130 S.Ct. 2549. Citing the equitable and fact-specific nature of the equitable tolling doctrine, the Court held that egregious attorney misconduct could sometimes amount to extraordinary circumstances so as to justify equitable tolling, and remanded for a determination of whether the attorney’s conduct met that *554 standard.[1] Id. at 649-52, 130 S.Ct. 2549.
The district court’s decision here was a straightforward application of—and indeed was compelled by—these cases. The attorney in Robinson made the exact same mistake as Lombardo’s attorney—believing that the statute of limitations began running once the Supreme Court denied rehearing instead of when it denied certio-rari—and we held that such an error did not justify equitable tolling. 416 F.3d at 650 n.l. The attorney in Lawrence harbored a similar misunderstanding as to when the statute of limitations was running, and the Supreme Court likewise held that the error did not justify equitable tolling. 549 U.S. at 336-37, 127 S.Ct. 1079. The same is true here.
Lombardo argues that his attorney’s misconduct was in fact more serious, and thus comparable to the egregious misconduct in Holland, because his attorney relied on information from a “trusted paralegal” instead of researching and calculating the deadline himself. Every error of this sort will involve a similar type of shortcoming, though, whether the attorney doesn’t do enough research, relies on the wrong type of source, or just plain gets it wrong. This factor alone thus does not elevate counsel’s error to an extraordinary circumstance or meaningfully distinguish this case from others involving similar errors. Lawrence, 549 U.S. at 336, 127 S.Ct. 1079 (noting that circuit precedent was unanimous at the time of counsel’s misunderstanding of the applicable rule, implying that counsel had not done any research into the issue); Taliani v. Chrans, 189 F.3d 597, 598 (7th Cir. 1999) (rejecting an argument for equitable tolling where counsel “miscalculated the limitations period because of inadequate research”); see Griffith, 614 F.3d at 331 (“Holland tells us that a simple legal mistake does not excuse an untimely filing. It may be negligent to wait until what is by a lawyer’s own calculation the last possible day, because such a calculation could be wrong. But this kind of negligence is not ‘extraordinary’ by any means. Such a blunder does not extend the time for filing a collateral attack.”).
Though some cases identify an attorney’s failure to perform any research as among the factors that contributed to a finding of extraordinary circumstances, none of those cases rely solely on that factor or suggest it can be sufficient to support that finding.[2] E.g., Holland, 560 U.S. at 652, 130 S.Ct. 2549; Baldayaque v. United States, 338 F.3d 145, 152-53 (2d Cir. 2003). In Baldayaque, for example, the attorney not only misunderstood the statute of limitations and failed to perform the proper research on that topic, he never filed a motion under § 2255, even though he had been retained for that sole purpose, and he never spoke to or met with the *555 petitioner, and did not follow up when his letter to the petitioner was returned as undeliverable. 838 F.3d at 152-53. And in Holland, as noted above, the attorney ignored the petitioner’s repeated requests for information, failed to communicate with him over a period of years, and disregarded his express directions. 560 U.S. at 652-53, 130 S.Ct. 2549. Those additional extenuating factors are absent here, as Lombar-do’s entire argument is premised on his attorney’s miscalculation based on incorrect information from his paralegal.
Lombardo also asks in the alternative that we remand for factual development as to whether his attorney actually abandoned him, but he has not justified that request. Lombardo did not raise any such argument to the district court and concedes even now that the record cannot support a finding of abandonment. Unsupported speculation raised for the first time on appeal is not a basis to remand.[3] Boulb, 818 F.3d at 341 (holding that conelusory and unsupported assertions of extraordinary circumstances did not warrant a remand for further development).
Therefore, at least absent our creation of an exception to this framework, to which we turn next, the district court did not abuse its discretion in finding that Lom-bardo did not establish extraordinary circumstances in support of his request for equitable tolling.
B.
Lombardo’s alternative argument is that we should create an exception to this element for equitable tolling specific to claims of ineffective assistance of trial counsel. In particular, he asks us to hold that for such claims, a petitioner can establish extraordinary circumstances by showing that (1) they had no postconviction counsel or their counsel was ineffective, and (2) their underlying claim has “some merit.” Lombardo bases this argument on the Supreme Court’s holdings in Martinez v. Ryan, 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), and Trevino v. Thaler, — U.S.-, 133 S.Ct. 1911, 185 L.Ed.2d 1044 (2013), which created a similar framework by which state prisoners seeking federal habeas review could excuse their procedural default.
By way of background, before state prisoners file a habeas petition in federal court under 28 U.S.C. § 2254, they must first assert their claim throughout at least one complete round of state-court review. Richardson v. Lemke, 745 F.3d 258, 268 (7th Cir. 2014). When they fail to do so, either because they omit their claim from the state proceedings or they fail to comply with the state’s procedural requirements in presenting their claim, the claim is considered procedurally defaulted. Martinez, 566 U.S. at 9-10, 132 S.Ct. 1309; Clemons v. Pfister, 845 F.3d 816, 819 (7th Cir. 2017). Federal courts typically will not consider such a claim on its merits. Martinez, 566 U.S. at 9-10, 132 S.Ct. 1309. There are limited exceptions to this rule, however, including when a petitioner can establish cause for the default and prejudice from a violation of federal law. Id. at 10,132 S.Ct. 1309.
These rules are not grounded in statute, but in concerns of comity and federalism. Coleman, 501 U.S. at 730, 111 S.Ct. 2546. They are “designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings *556 within our system of federalism.” Martinez, 566 U.S. at 9, 132 S.Ct. 1309. Thus, the contours of this doctrine and the availability of exceptions thereto “are elaborated in the exercise of the Court’s discretion,” based on its equitable judgment. Id. at 13,132 S.Ct. 1309.
The Supreme Court recognized one such exception in Martinez. There, the state prisoner wished to argue in his federal petition that his trial counsel was ineffective. Id. at 7,132 S.Ct. 1309. However, that claim was procedurally defaulted because he did not raise it in his state postconviction proceeding. Id. Instead, the attorney that had been appointed for him in that proceeding filed a notice akin to an Anders brief, contending that he lacked any meritorious claim. Id. at 6, 132 S.Ct. 1309. Thus, when the petitioner filed his federal petition, the district court dismissed it as procedurally defaulted, finding that an attorney’s errors in a postconviction proceeding do not qualify as cause for a default. Id. at 7-8,132 S.Ct. 1309.
The Supreme Court reversed, creating a narrow exception to procedural default in those circumstances. It noted that claims for ineffective assistance of trial counsel are unique in that they often can only be raised in postconviction proceedings. 566 U.S. at 11, 132 S.Ct. 1309. If, because they lack counsel at that stage or because their postconviction counsel is ineffective, petitioners do not raise their ineffective-assistance claim in the state postconviction proceedings, then the state courts will have never considered the claim and it will be procedurally defaulted in the federal proceedings. Id. at 10-11, 132 S.Ct. 1309. And because petitioners do not have a constitutional right to counsel at the postconviction stage, they could not avoid default by presenting an independent claim for ineffective-assistance-of-posteonviction-counsel, as they could for issues that should have been raised by trial or appellate counsel. Id. Thus, enforcing the procedural default in the federal proceeding would mean that no court at any stage will have considered the ineffeetive-assistance-of-trial-counsel claim on its merits. Id.
To avoid that result, the Supreme Court exercised its equitable discretion to create a framework by which state prisoners could excuse their procedural default for claims of ineffective assistance of trial counsel that had not been considered on its merits at any stage of the proceedings in state court. Id. at 13-14, 132 S.Ct. 1309. Under that framework, the petitioners would first have to show either that they had no counsel or that their counsel was ineffective in the state postconviction proceeding. Id. at 14, 132 S.Ct. 1309. Second, they would have to show that their underlying claim of ineffective assistance of trial counsel has at least “some merit.” Id. Martinez initially held that this rule applied only in states that barred defendants from presenting these claims until postconviction proceedings, id. at 17, 132 S.Ct. 1309, but the Court modified that limitation in Trevino to also apply the rule in states that theoretically permit petitioners to raise those claims on direct review, but make it virtually impossible to do so, 133 S.Ct. at 1915.
Martinez’s holding carved out a limited exception to the Supreme Court’s previous holding in Coleman. Relying on principles of agency law, Coleman had held that the ineffectiveness of a postconviction attorney does not constitute cause to excuse a procedural default, as the attorney’s actions are chargeable to the client. 501 U.S. at 752-53, 111 S.Ct. 2546. Martinez modified that rule by permitting an attorney’s ineffectiveness to be considered in this narrow context. Martinez emphasized, however, that its holding created only a “limited qualification” to Coleman’s rule, and it *557 took pains to explain the limited impact of its holding:
The rule of Coleman governs in all but the limited circumstances recognized here. The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State’s appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.
Martinez, 566 U.S. at 16, 132 S.Ct. 1309 (internal citations omitted).
Lombardo nonetheless seeks to apply Martinez’s holding in the context of equitable tolling. He notes that, like the petitioners in Martinez and Trevino, federal defendants are typically unable to present ineffeetive-assistanee-of-trial-counsel claims until their postconviction proceedings, at which they do not have a constitutional right to counsel. He further notes that enforcing the statute of limitations to bar his ineffective-assistance claim at this stage would mean that no court will have considered that claim on its merits. He thus argues that he should be able to use Martinez’s framework to satisfy the “extraordinary circumstances” element for the purposes of equitable tolling.
To begin with, though, Martinez’s holding itself is not applicable here. Martinez arose in the context of procedural default, and established a framework by which state prisoners could establish cause and prejudice to excuse their procedural default and thus present claims in a federal habeas petition that they failed to present to the state courts. However, even state prisoners who meet that standard, and can thus present their claims in federal court without being procedurally defaulted, must still file their petition in federal court within the statute of limitations. In that sense they are in the same boat as federal prisoners, who never face procedural default for ineffective-assistance claims, Massaro v. United States, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003), but who likewise must still comply with the statute of limitations to assert their claims. Martinez said nothing about excusing that independent procedural requirement for either state or federal petitioners.
■ Lombardo’s argument is thus that we should extend Martinez’s reasoning to create a similar exception to the statute of limitations, under which an attorney’s ineffectiveness would constitute extraordinary circumstances. However, that argument runs headlong into the Supreme Court’s holdings in Lawrence and Holland, both of which held that attorney negligence, such as miscalculating a filing deadline, does not constitute an extraordinary circumstance for the purposes of equitable tolling. True, the Supreme Court has not applied those holdings in this precise fact-pattern, where the statute of limitations would bar an initial review of a claim for ineffective assistance of trial counsel. We do not read Lawrence and Holland as being so paper-thin that they only apply to the postures in which they arose, though. Nothing in those cases suggested that their equitable-tolling holdings turned on the nature or merits of the underlying claims. To the contrary, those cases applied generally applicable principles in holding that a “ ‘garden variety claim of excusable neglect’ ” does not warrant equitable tolling. Holland, 560 U.S. at 651-52, 130 S.Ct. 2549 (quoting Irwin, 498 U.S. at 96, 111 S.Ct. 453); Lawrence, 549 U.S. at 336, 127 S.Ct. 1079; see *558 also Menominee Indian Tribe, 136 S.Ct. at 756-57.[4]
It is also true, as Lombardo notes, that Martinez invoked equitable principles, and that its concern over allowing petitioners to present an ineffective-assistance-of-trial-counsel claim to at least one court could apply much the same here. But even if we believed that Martinez’s reasoning undermined the vitality of the Supreme Court’s previous holdings in Laurrence and Holland, only the Supreme Court has the prerogative of overruling or modifying those holdings. Rodriguez de Quijas v. Shearson/Am. Exp., Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). Given Martinez’s emphatic statement that its holding was limited to its narrow circumstances, we cannot find that the Supreme Court has already done so. Until it tells us otherwise, we take the Court at its word and decline to hold that Martinez created carve-outs to the holdings in Lawrence and Holland. See Mathis v. United States, — U.S.-, 186 S.Ct. 2243, 2254, 195 L.Ed.2d 604 (2016) (“[A] good rule of thumb for reading [Supreme Court] decisions is that what they say and what they mean are one and the same[J”).
Moreover, our own precedent has squarely addressed this precise scenario, and we have held that errors identical to that of Lombardo’s counsel do not constitute extraordinary circumstances, even when the petitioners wished to assert ineffective-assistance-of-trial-counsel claims in the first instance. E.g., Robinson, 416 F.3d at 650 n.1; Marcello, 212 F.3d at 1010. Again, since Martinez emphatically limited its holding to the narrow context before it, we do not see Martinez as justifying our reconsideration of that precedent.[5] De Leon Castellanos v. Holder, 652 F.3d 762, 765 (7th Cir. 2011) (noting that “it would take compelling circumstances, or an intervening on-point Supreme Court decision, to disturb” settled circuit precedent). Taking that step would also entail creating a circuit split, as the Eleventh Circuit (the only other circuit to have addressed this issue) has likewise refused to extend Martinez to the context of equitable tolling. Arthur v. Thomas, 739 F.3d 611, 631 (11th Cir. 2014) (“[T]he reasoning of the Martinez rule does not apply to AEDPA’s limitations period in § 2254 cases or any potential tolling of that period.”). Many district courts have done likewise, and Lombardo has not cited a single case to the contrary.
Lombardo argues that we already went much of the way to importing Martinez’s framework into equitable tolling in Ramirez. There, we held that the district court abused its discretion in denying a Rule 60(b)(6) motion following the denial of an ineffective assistance claim under § 2255, as counsel abandoned the petitioner once the motion was denied, causing him to lose his ability to file what would have been a meritorious appeal. 799 F.3d at 847-48. In doing so, we drew in part on the principles underlying Martinez and Trevino relative to the importance of ineffective assistance claims and petitioners’ inability to raise them at an earlier stage in the proceedings. Id. at 853-54. Lombar- *559 do thus argues that because Rule 60(b)(6) and equitable tolling are both equitable in nature and require “extraordinary circumstances,” it is only a short step from Ramirez to the result he seeks here.
We disagree, as Ramirez is distinguishable in at least two key respects. First, it arose in the context of a Rule 60(b) motion, not in the context of equitable tolling. Though, as Lombardo notes, both contexts involve equitable principles, Ramirez did not have to contend with the longstanding precedent in the equitable tolling context holding that this sort of error by counsel does not justify equitable tolling. As discussed above, recognizing such an exception here would be inconsistent with Supreme Court precedent, and would require us to overturn our own precedent on this topic and create a circuit split. Ramirez did not do so, Brooks v. Walls, 279 F.3d 518, 522 (7th Cir. 2002) (“One panel of this court cannot overrule another implicitly. Overruling requires recognition of the decision to be undone and circulation to the full court under Circuit Rule 40(e)”), nor do we.
Second, Ramirez rested not on a miscalculation of a deadline, but on a finding that Ramirez’s counsel abandoned him.[6] Ramirez, 799 F.3d at 854 (“Counsel’s abandonment deprived Ramirez of the ability to press his ineffective assistance argument on appeal.” (citing Maples and Holland))-, see also id. at 850 (“Most importantly, postconviction counsel abandoned Ramirez on appeal....”); id. at 851 (“Ramirez points to his abandonment by counsel as the extraordinary circumstance that justifies re-opening his section 2255 proceeding.”). And since the misconduct took place after entry of judgment,[7] it fell outside the purview of Martinez, as at least one court had adjudicated the ineffective-assistance claim on its merits. Martinez, 566 U.S. at 16, 132 S.Ct. 1309 (“The rule of Coleman governs in all but the limited circumstances recognized here. The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings .... ”); Coleman, 501 U.S. at 751, 111 S.Ct. 2546 (holding that counsel’s neglect in failing to file a timely notice of appeal was insufficient to excuse the petitioner’s procedural default). Thus, notwithstanding its discussion of Martinez and Trevino and its embracing of the principles underlying those cases, Ramirez’s holding is best construed as resting on abandonment under Maples and Holland.[8] Understood in that manner, Ramirez is of no assistance to Lombardo, as Maples and Holland apply to equitable tolling by then-own terms, but Lombardo cannot make the showing of abandonment or egregious attorney misconduct required under those cases. Accordingly, Ramirez does not control the outcome in this case, nor does it go nearly as far as Lombardo contends in bridging the gap to the conclusion he asks us to reach.
Moreover, importing Martinez’s framework into the equitable tolling context would greatly erode the statute of limitations. Though Lombardo relies on an error *560 made by his postconviction counsel, Martinez applied equally to petitioners with ineffective counsel and petitioners with no counsel. 566 U.S. at 17, 132 S.Ct. 1309. Thus, pro se prisoners, who make up the vast majority of filers, would no longer have to show any actual extraordinary circumstances that stood in their way; they would merely need to have a claim with “some merit” to satisfy the extraordinary circumstances element. We recently rejected such an expansion of equitable tolling:
[L]ack of representation is not on its own sufficient to warrant equitable tolling, nor is a petitioner’s lack of legal training. Prisoners do not have a constitutional right to the assistance of counsel in post-conviction collateral attacks. We cannot give the label “extraordinary” to a trait that applies to 92 percent of prisoners filing petitions. Nor is lack of legal knowledge, another feature shared by the overwhelming majority of prisoners, by itself enough to justify equitable tolling. The statutory deadlines would be meaningless if either of these common problems were enough to override the normal rules.
Socha v. Boughton, 763 F.3d 674, 685 (7th Cir. 2014) (internal citations omitted); see also Boulb, 818 F.3d at 341 (holding for similar reasons that conclusory allegations of an intellectual disability by a pro se petitioner do not justify an evidentiary hearing on equitable tolling). Represented filers would likewise effectively be exempt from having to establish extraordinary circumstances, as an attorney’s failure to file a petition on time would almost always satisfy Martinez’s ineffectiveness prong (even though, as courts have repeatedly held, it is hardly extraordinary). Lawrence, 549 U.S. at 336-37, 127 S.Ct. 1079. Thus, no federal prisoner with a claim of ineffective assistance of trial counsel would ever have to establish any actual extraordinary circumstances in support of equitable tolling for such a claim.
Petitioners would still, have to show that their claim has “some merit” to satisfy Martinez’s test, but that requirement would be of little consequence. Merit-less § 2255 motions are already subject to dismissal at the outset. See Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts. And it would be anomalous to have to consider the merits of an underlying claim in deciding a threshold question like whether the statute of limitations applies. For that reason, we have previously refused to consider the nature or merits of an underlying claim in deciding whether to apply equitable tolling.[9] Johnson, 381 F.3d at 590-91; see also Rouse, 339 F.3d at 251.
In short, under Lombardo’s proposed framework, every petitioner whose ineffective-assistance claim wouldn’t already fail on other grounds will have established extraordinary circumstances. That would effectively transform the statute of limitations into a mere safe-harbor provision, as petitioners could still file their ineffective-assistance claim at any time so long as they have exercised reasonable diligence. Equity does not require, and precedent does not permit, such an undermining of *561 the congressionally enacted statute of limitations.
For those reasons, we decline to recognize Martinez’s framework as a means of establishing extraordinary circumstances for the purposes of equitable tolling. Therefore, the district court did not abuse its discretion in finding that Lombardo was not entitled to equitable tolling and dismissing his motion as untimely.
III.
The judgment of the district court is Affirmed.

. In its subsequent decision in Maples, the Court characterized Holland as resting on the distinction between attorney negligence— which is attributable to the client—and attorney abandonment—which severs the principal-agent relationship, making the attorney’s acts no longer attributable to the client. Maples, 565 U.S. at 281-83, 132 S.Ct 912. The parties thus dispute whether Holland actually requires abandonment or only egregious misconduct, but we need not engage in that debate, as the circumstances here fall well short of meeting either standard.

. As we explained in Socha, “Defects in performance, whether through the attorney’s own fault or attributable to extenuating circumstances, do not inevitably support equitable tolling, but they are relevant. The Supreme Court has identified some types of errors (such as miscalculation of a deadline) that do not warrant relief; it calls them ‘garden variety’ claims of excusable neglect, meaning that these errors are too common to be called ‘extraordinary.’ ” 763 F.3d at 685 (quoting Holland, 560 U.S. at 651-52, 130 S.Ct. 2549).

. We express no position as to whether this issue might be raised through post-judgment motions in the district court.

. The petitioners in Holland and Lawrence were also each challenging death sentences. If the Supreme Court was amenable to applying more lenient equitable tolling standards to protect particularly important categories of claims, those capital cases would have been good candidates for such a rule. Yet in both cases the Supreme Court insisted on a showing of extraordinary circumstances beyond the miscalculation of a deadline.

. To be clear, we do not hold that Martinez has no relevance or application outside its particular context, only that it does not justify upsetting settled precedent in this particular context.

.Though Ramirez expressed some question about habeas counsel’s performance, it did not hold that his presentation of the underlying claim was ineffective; to the contrary, it held that the motion should have been granted on its merits even as it was presented to the district court. 799 F.3d at 855-56.

. Ramirez identified habeas counsel's errors as failing to inform the petitioner of the district court's denial of his motion, failing to file any post-judgment motions, and failing to file a notice of appeal. 799 F.3d at 849.

. The en banc Ninth Circuit has interpreted Ramirez in that way. Washington v. Ryan, 833 F.3d 1087, 1094-95 (9th Cir. 2016) (en banc).

. As we stated in Johnson, " ‘allowing consideration of the merits of time-barred claims to creep into the equitable tolling analysis lets petitioners effectively circumvent the statute of limitations because the merits of their claims will always be considered. This would enable petitioners who were in no way prevented from complying with the statute of limitations to create delay and undermine finality—two of the reasons that precipitated enactment of the AEDPA statute of limitations. It is thus best never to apply equitable tolling based on a factor that had nothing to do with a failure to file on time.’ ” 381 F.3d at 590-91 (quoting Rouse, 339 F.3d at 251) (internal alterations omitted).